UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIELLE SMEAL, ) <br> by Sally Smeal, her mother and next friend, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> vs. ) <br>  ) <br> SHERIFF DREW ALEXANDER, et al., ) <br>  ) <br> Defendants. ) | Case No. 5:06 CV 2109 <br><br> Judge Dan Aaron Polster <br><br> **MEMORANDUM OF OPINION** <br> **AND ORDER** |

Before the Court is Defendants' Motion to Dismiss[1] ("Motion" or "Motion to Dismiss") (**ECF No. 12**).  Plaintiff Danielle Smeal, by her mother and next friend, Sally Smeal, has filed a myriad of state and federal claims against various Summit County officials for monetary damages arising from her thirteen-day detention in the Summit County Jail as a material witness in a criminal case.  For the reasons to follow, the Motion is **GRANTED**.

**I.**

On February 16, 2006, Galo Sanchez-Pesantes was indicted on a charge of Unlawful Sexual Conduct with a Minor, a fourth degree felony.  *Compl.* ¶ 19 and Ex. 1. Danielle Smeal, a fourteen year old minor and the victim of the alleged conduct, was subpoenaed to testify at Sanchez-Pesantes' trial before Judge James E. Murphy, scheduled for May 8, 2006.

---

[1]The motion to dismiss is included in a document filed by Defendants entitled "Reply to Response to Show Cause Order and Defendants' Motion to Dismiss," which the Court is treating as a motion to dismiss.

*Id*. ¶¶ 20- 22. Just prior to trial, Danielle ran away from home and could not be located; accordingly, the State dismissed without prejudice the charges against Sanchez-Pesantes due to the unavailability of a material witness (i.e., Danielle). *Id*. ¶ 22.

On or about May 9, 2006, Sally Smeal found Danielle, who attends Norton Middle School, in the City of Akron and eventually took her to the Prosecutor's office. *Compl*. ¶ 24. Summit County Assistant Prosecutor Daniel Sallerson presented Danielle before Judge Murphy seeking her detainment as a material witness in the case against Sanchez-Pesantes. *Id*., Ex. 3 at 3. Danielle, whose mother was present at the hearing, was not represented by counsel. *Id*. ¶ 27. Assistant Prosecutor Sallerson told Judge Murphy, in pertinent part,

> As the court may recall yesterday, upon State's motion this matter was dismissed without prejudice for the reason the minor victim, Danielle Smeal, was unavailable. She failed to appear yesterday. She was required to do so. In fact, [she] had run away from home, and her mother had filed a report with the Norton Police Department in an attempt to get her under control.
>
> After this matter was dismissed, it had been represented to the State that last night in the evening hours her mother actually found her walking in the vicinity of South Arlington Street, that Danielle refused to cooperate with her mother, but the mother forced her to get into the car and she was taken to the hospital because there were concerns if she was under the influence of anything.
>
> The State is requesting this court to place Danielle into custody because she is a material witness in the case against Galo Sanchez-Pesantes which we are in the process of refiling.

*Id*. at 2-3. After asking the Prosecutor and Danielle some questions, Judge Murphy concluded that Danielle was a material witness. *See id*. at 3-4. Judge Murphy ordered that Danielle be taken to, and detained at, the Summit County Juvenile Detention Center until the trial was concluded or until such time as a bond ($5,000/10%) could be posted. *See id*. at 4 and Exs. 4, 6.

The Summit County Court of Common Pleas, Juvenile Division, Judge Linda Tucci-Teodosio, issued an order refusing to admit Danielle to the Juvenile Detention Center because Judge Murphy's order failed to state that Danielle was under the age of 18, and the Juvenile Justice and Delinquency Prevention Act ("Juvenile Justice Act") prohibited the detention center from detaining a child who is not an offender or merely a status offender. *Compl*. ¶ 29 and Ex. 5. Upon receiving notice of Judge Tucci-Teodosio's order, Judge Murphy ordered that Danielle be remanded to the Summit County Jail, with the same bond provisions previously set. *Id*. ¶ 30 and Ex. 6. Pursuant to Judge Murphy's order, Summit County Sheriff's deputies transported Danielle to the jail. *Id*. ¶ 31.

Upon Danielle's arrival to the facility, she was processed per the normal processing procedures used for adult criminals housed at the facility (i.e., she was fingerprinted, photographed for mugshots, strip searched before a female officer[2] and issued an orange jumpsuit). *Id*. ¶ 32. She was thereafter detained in a portion of the facility that was separate from the adult inmates. *Id*. ¶¶ 33, 36.

On May 17, 2006, Kim Gaus, the Compliance Coordinator for the Ohio Department of Youth Services, visited the Summit County Jail to investigate Danielle's detention. *Id*. ¶ 41. On May 19, 2006, she sent a letter to Summit County Sheriff Drew Alexander (with copies to Steve Finical, the Summit County Chief Jailer, and Judge Murphy) stating her finding that Danielle was properly "sight and sound separated from other incarcerated adults" as required under § 223(a)(12) of the Juvenile Justice Act; however, she also stated that

---

[2]There is no allegation that a body cavity search was conducted. Rather, Danielle was required to change into the jailhouse garb in the presence of a female deputy – a procedure uniformly applied to all persons detained at the facility in consideration of the safety of employees and to ensure that no contraband is brought into the facility.

-3-

the Jail was violating § 223(a)(11) regarding the deinstitutionalization of status offenders and § 223(a)(22) regarding the removal of juveniles from adult jails, and asked the Sheriff to file an action plan by May 30, 2006. *Id*. ¶¶ 41, 42 and Ex. 8.

On May 19, 2006, Eddie Sipplen, Esq., entered an appearance on Danielle's behalf in the case against Sanchez-Pesantes and filed a petition for writ of habeas corpus against Sheriff Alexander in the Summit County Court of Appeals, Ninth Judicial District, seeking the release of Danielle on the basis that her confinement was unconstitutional. *Compl*. ¶ 43 and Ex. 9. The Sheriff filed a response to the petition. *Id.*. ¶ 44 and Ex. 10. On May 22, 2006, the Court of Appeals issued a journal entry overruling Judge Murphy's detention order stating, in pertinent part:

> [T]he record reveals that Petitioner is being detained in violation of her Fourteenth Amendment right to due process and in violation of her right to be free from unreasonable seizure. Additionally, Petitioner's detention in an adult facility is not legally authorized. This Court, therefore, finds that Petitioner is being illegally detained by Respondent. It is hereby ordered that Petitioner be and hereby is discharged from the custody of Respondent and that she go hence without delay. As Petitioner is a juvenile, Respondent is ordered to release her into the custody of a parent or guardian.

*Id.,* Ex. 11 at 5. The Sheriff released Danielle to her mother's care upon receipt of the order. *Id*. ¶ 47.

On August 31, 2006, Sally Smeal filed the instant action against Sheriff Alexander, Deputy Sheriff Finical and other unnamed Deputy Sheriffs, Prosecuting Attorneys Daniel Sallerson, Mary Ann Kovach and Sherri Bevan Walsh – all in their individual and official capacities. Danielle alleges that Sallerson, Kovach and Walsh violated her equal protection and due process rights by seeking her detention based on their alleged misrepresentations to Judge

Murphy in violation of 42 U.S.C. § 1983 (Count 1); that Defendants conspired to violate Danielle's equal protection and due process rights in violation of 42 U.S.C. §§ 1983, 1985 (Count 2); that Defendants unlawfully arrested Danielle in violation of § 1983 (Count 3); that Defendants unlawfully detained and confined Danielle in violation of § 1983 (Count 4); that Danielle was subjected to an unconstitutional strip search in violation of § 1983 (Count 5); that the unnamed Sheriff's Deputies received grossly negligent training and supervision in violation of § 1983 (Count 6). Smeal also brings state-law claims against Defendants for intentional infliction of emotional distress (Count 7); battery (Count 8); malicious abuse of process (Count 9); and civil conspiracy (Count 10).

On September 12, 2006, the Court issued a show cause order directing Smeal to file a brief by a date certain explaining why the claims against Defendants should not be dismissed based on prosecutorial, quasi-judicial or any other type of immunity. *ECF No. 2*. Smeal filed two response memoranda. *ECF Nos. 3, 10*. On September 29, 2006, Defendants filed the pending Motion to Dismiss, arguing that all the claims against the Defendants should be dismissed on the basis of absolute, quasi-judicial or statutory immunity. *Motion* at 2. Smeal filed a response brief and a supplemental brief, and Defendants filed a reply brief. *ECF Nos. 13- 15*. The Court has reviewed the briefs and the entire record, and is prepared to issue its ruling.

**II.**

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Clevenger v. Dillard's, Inc.*, 412 F.Supp.2d 832, 840 (S.D. Ohio 2006) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993), in turn citing *Nishiyama v. Dickson County*,

814 F.2d 277, 279 (6th Cir.1987)). To that end, the complaint must be construed in the light most favorable to the nonmoving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974) and *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988). The test for dismissal under Rule 12(b)(6) is a stringent one. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) and citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996)). "Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless no law supports the claim made, the facts alleged are insufficient to state a claim, or an insurmountable bar appears on the face of the complaint." *Clevenger*, 412. F.Supp.2d at 840.

### III.

**A. Federal Claims against Prosecutors**

**1. Individual Capacity Claims**

Judges are entitled to absolute immunity from suits for money damages for all actions taken in their judicial capacity, unless those actions are taken in the absence of any jurisdiction. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam); *Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988)). Absolute judicial immunity extends to nonjudicial officers who perform "quasi-judicial" duties. *Id.* (citing *Joseph*

*v. Patterson*, 795 F.2d 549, 560 (6th Cir. 1986); *Johnson v. Granholm*, 662 F.2d 449 (6th Cir. 1981)). Quasi-judicial immunity extends to persons performing tasks so integral or intertwined with the judicial process that they are considered arms of the judicial officer who is immune from suit. *Id*. (citing *Scruggs v. Moellering*, 870 F.2d 376 (7th Cir. 1989)). The Supreme Court has endorsed a "functional" approach in determining whether a nonjudicial officer is entitled to absolute immunity. *Bush*, 38 F.3d at 847(citing *Forrester v. White*, 484 U.S. 219, 224 (1988); *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Under the functional approach, the district court must look to the nature of the function performed and not to the identity of the actor who performed it, in determining whether absolute quasi-judicial immunity applies. *Id*. (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), in turn quoting *Forrester*, 484 U.S. at 229).

Prosecutors are entitled to absolute immunity for conduct intimately associated with the judicial phase of the criminal process. *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Bush*, 72 Fed. Appx. at 307 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Benson v. O'Brien*, 67 F.Supp.2d 825, 831 (N.D. Ohio 1999) (prosecuting attorneys are entitled to absolute immunity while acting in their roles as advocates for the State); *but see Bush*, 72 Fed. Appx. at 307 (holding that a prosecutor performing administrative acts unrelated to judicial proceedings is entitled only to qualified immunity). Absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or maliciously. *Id*.

Ohio's material witness statutes, O.R.C. §§ 2941.48 and 2937.18, provide for the pretrial detention of material witnesses, either before or after indictment, along with payment of witness fees for each day of their detention and mileage. As well, the statutes ensure that cases in which a material witness is detained are given priority over other cases, and that they must "be

-7-

had with due speed." *Id*. *See, e.g., State of Ohio v. Kirklin*, No. 50157, 1986 WL 4390 at *2 (Ohio App. 8 Dist. Apr. 10, 1986) (court orders detention of material witness who cannot post bond); *State v. Hilts*, No. 35914, 1977 WL 201334 at *2 (Ohio App. 8 Dist. Apr. 14, 1977) (O.R.C. §§ 2941.48 and 2937.18 provide authority for court-ordered incarceration of witnesses under specific circumstances); *State of Ohio v. Burge*, No. 14405, 1995 WL 29206 (Ohio App. 2 Dist. Jan. 25, 1995) (discussing constitutional requirements for detaining material witnesses); *State ex. re. Dorsey v. Haines*, 63 Ohio App.3d 580 (1991) (discussing same). A witness is deemed to be material if she possesses information material to the investigation of a crime, and her statements or behavior make it reasonably unlikely that she will appear at the suspect's trial. *Stone v. Holzberger,* 807 F.Suppl. 1325 (S.D. Ohio 1992) (citing *White by Swafford v. Gerbitz,* 892 F.2d 457 (6th Cir. 1989) (construing a Tennessee material witness statute that is similar to the Ohio material witness statutes).

      Smeal argues that Prosecutor Sallerson's conduct in seeking Danielle's detention as a material witness was not protected by absolute immunity because he was acting in the role of an investigator when he searched for her and was a complaining witness when seeking her detention; accordingly, only qualified immunity applies. This argument lacks merit for several reasons. First, there is no allegation that Prosecutor Sallerson conducted any search for Danielle and it is undisputed that Danielle's mother brought her to the Prosecutor's office after finding her on the streets of Akron. Second, it is beyond argument that Danielle was a material witness in the criminal case against Sanchez-Pesantes. She was the alleged victim of the crime; her testimony was crucial to the State's case; her failure to appear for the trial, despite being subpoenaed, placed the criminal case in jeopardy and made it reasonably unlikely that she would

appear for the next trial. The Court finds that Prosecutor Sallerson's conduct in appearing before Judge Murphy and asking him to hold Danielle as a material witness in the case against Sanchez-Pesantes (which he was in the process of refiling) is conduct typically undertaken by a prosecutor in his role as advocate for the State; thus, his conduct is protected by absolute immunity. This is so regardless of the constitutionality of Judge Murphy's decision to detain Danielle at the Juvenile Detention Center or the Summit County Jail. Smeal cannot attack indirectly Judge Murphy's alleged unconstitutional ruling (which is protected by absolute immunity) by suing Prosecutor Sallerson for monetary damages.

Smeal also argues that only qualified immunity applies to Prosecutor Sallerson's conduct based on a decision issued by a district court in Idaho that is currently pending before the Ninth Circuit. *See ECF No. 14, Attach., Abdullah Al-Kidd v. Alberto Gonzales*, No. 1:05CV93, ECF No. 79 (D. Idaho, Sep. 27, 2006). Aside from the fact that *Al-Kidd* has no precedential effect in this district, it is factually distinguishable. Al-Kidd was arrested on March 16, 2003 pursuant to a material witness warrant at the ticket counter of the Dulles International Airport while he was checking in for a flight to Saudi Arabia. After being detained at various detention centers, he was transported back to Idaho where, on March 31, 2003, he was released pursuant to terms and conditions which precluded him from leaving a four-state area of the United States. Al-Kidd remained subject to these restrictions until June 2004 when the trial for which he was being detained was completed. He thereafter filed, among other things, § 1983 claims against former Attorney General John Ashcroft asserting that his detention pursuant to policies established by Ashcroft violated the Fourth and Fifth Amendment. Ashcroft filed a motion to dismiss arguing that he was entitled to absolute immunity for his "prosecutorial"

actions. Al-Kidd argued that Ashcroft's actions were not prosecutorial but "investigative" and, at best, were only afforded qualified immunity. The district court agreed, holding that the function Al-Kidd challenged was Ashcroft's development and implementation of a new policy and practice for use of the material witness statute as an investigative tool to detain and/or investigate possible criminal wrongdoing where the Government lacked probable cause, or to otherwise hold certain individuals preventively. Thus, the district court concluded, Ashcroft was not entitled to absolute immunity but may be entitled to qualified immunity. The instant case cannot be analogized to *Al-Kidd*. Among other things, Smeal does not allege that Prosecutor Sallerson used Ohio's material witness statute to detain Danielle without probable cause for committing some unspecified crime.

Because the Court finds that Prosecutor Sallerson's conduct in seeking Danielle's detention as a material witness constitutes conduct intimately associated with the judicial process, the § 1983 claims against Prosecutors Sallerson, Kovach and Walsh are barred by the doctrine of absolute immunity.

**2. Official Capacity Claims**

Smeal's request for monetary relief against the prosecutors in their official capacities is deemed to be a suit against the State, which is not a party to this case, and which suit is barred in any event by the Eleventh Amendment. *Boone v. Kentucky*, 72 Fed. Appx. 306, 307 (6th Cir. 2003) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (holding that a municipal prosecutor acts as an arm of the state in prosecuting or declining to prosecute state criminal offense). Further, Smeal does not allege that the Summit County Prosecutor has established a policy of

using the material witness statutes to detain without probable cause minors who may have committed crimes, and the County cannot be held liable under § 1983 based on the doctrine of *respondeat superior*. *McQueen v. Beecher Community Schools*, 443 F.3d 460, 471 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs.*, 438 U.S. 658, 690-91 (1978)). Accordingly, these claims are dismissed.

**B.     Federal Claims against Sheriffs**

    **1.     Individual Capacity Claims**

Smeal contends that the Sheriff and his deputies are liable under § 1983 for transporting Danielle to the Summit County Jail and detaining her therein. As previously discussed, quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that they are considered an arm of the judicial officer who is absolutely immune. *Bush*, 38 F.3d at 847. The Sixth Circuit has held that such officials "must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function." *Id.* at 848.

> It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.

*Id.* Consequently, the Sixth Circuit has held that the execution of a court order is an act intrinsically associated with a judicial proceeding. *Id.* (citing *Patterson v. Von Riesen*, 999 F.2d 1235, 1240-41 (8th Cir. 1993) (warden); *Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758 (9th Cir. 1987) (social worker); *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986) (sheriff); *Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981) (court clerks)).

Judge Murphy was acting in his judicial capacity when he ordered the detention of Danielle in the county jail. Since the facility is located in Summit County, the Sheriff and his deputies' involvement "necessarily arose in the execution of the order." *Bush*, 38 F.3d at 847. Once so ordered, the Sheriff and his deputies had no alternative but to take Danielle into custody.

Danielle concedes in her complaint that she was subjected to the normal processing procedures, *Compl*. ¶ 32, and the deputies followed the guidelines of the material witness statute by separating her from the adult prisoners in the facility. *See* O.R.C. §2937.18. Thus, the Sheriff and his deputies' implementation of Judge Murphy's order is protected by absolute immunity.

Smeal argues that the Sheriff and his deputies are protected only by qualified immunity. Courts have rejected any qualification of the immunity extended to public officials who implement court orders. *See, e.g., Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989) (reversing the denial of summary judgment based on qualified immunity grounds, concluding that a sheriff enforcing a court order is protected by qaulified immunity); *Mays v. Sudderth*, 97 F.2d 107 (5th Cir. 1996) (reversing denial of summary judgment on qualified immunity grounds, concluding that sheriff enforcing a court order is protected by qualified immunity). The policy underlying this legal doctrine is sound.

> [Q]ualified immunity for officials following court orders will not protect the judicial process by permitting the dismissal of insubstantial claims prior to trial. Even with the adoption of the objective qualified immunity standard in *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19, . . . (1982), the applicability of the defense turns on the fact-specific question of whether reasonable officers could have believed their conduct to be proper in light of the "clearly established" law. Factual disputes would require discovery if not a trial. . . . Moreover, in most instances what is "clearly established" would be subject to differing views. . . . Interlocutory appeals

-12-

> would inevitably follow. The Supreme Court has acknowledged
> that even the processing of a complaint that is dismissed before
> trial consumes a considerable amount of time and resources. . .
> .The expense of litigation which officials like [the defendant
> sheriffs] would incur, the diversion of their attention from more
> socially productive obligations and the deterrence of qualified
> individuals from accepting public employment are not insignificant
> considerations. . . .

*Valdez*, 878 F.2d at 1288-89 (parallel citations, case citations, and footnote omitted). Moreover, courts have held that it is unfair to spare the judges who give orders while punishing the officials who obey them. *Roland v. Phillips*, 19 F.3d 552, 557 (11th Cir. 1994) (citing *Valdez*, 878 F.2d at 1289); *see also Mays*, 97 F.3d at 113 (explaining that because judges are absolutely immune from suit for their judicial actions, to deny similar protection to government officials executing their orders would render those officials "lightning rods" for litigation aimed at judges' orders). Rather, "[t]he proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution." *Id.* (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986).

Here, Danielle properly challenged the constitutionality of her detention by filing a petition for writ of habeas corpus in the court of appeals. Once the appeals court ordered her release, the Sheriff followed that order and released Danielle to her mother's care.

According to Smeal, the decision of who to hold and release from jail is an administrative function performed by the Sheriff's Department; thus, the officers' conduct in failing to release Danielle is protected only by qualified immunity. Moreover, the officers violated Danielle's constitutional rights by failing to release her sooner because the Sheriff's Department routinely "emergency releases" inmates but didn't release Danielle, and because

Kim Gaus advised the Sheriff that Danielle's detention violated certain provisions of the Juvenile Justice Act. This argument ignores the fact that Danielle was being detained in the jail pursuant to a court order, and that she was being held in a separate portion of the jail as a material witness in a criminal case – not as a criminal.

Smeal argues that the Sheriff and his deputies are not immune from suit based on *Dalhover v. Dugan*, 54 Ohio App.3d 55 (1989). In *Dalhover*, an administratrix of the estate of a youth who committed suicide while being detained in a juvenile detention center, and whose suicidal tendencies were made known to the defendants by the decedent, brought a § 1983 action against the superintendent of the center. The state court granted the superintendent's motion for summary judgment based on his alleged quasi-judicial immunity because he was acting pursuant to a juvenile court's order of placement. The appeals court reversed, finding that the numerous acts complained of were performed in the day-to-day administration of the juvenile detention center; thus, those acts were not protected by quasi-judicial immunity. That case is clearly distinguishable from the instant case. In *Dalhover*, the issue was the failure to provide sufficient care for a detainee with known suicidal tendencies. Here, Danielle does not allege any mistreatment at jail other than her initial processing; she was housed separately as is required by the material witness statute; and the Sheriff had no discretion to release her until he was ordered to do so. Accordingly, *Dalhover* is inapposite. Furthermore, *Dalhover* is a state court decision interpreting federal law and is not binding on this Court.

Because the Court finds that the Sheriff and his deputies transported Danielle to the Summit County Jail and detained her therein pursuant to a facially valid court order, the § 1983 claims against them are barred by the doctrine of absolute quasi-judicial immunity.

### 2. Official Capacity Claims

Smeal's request for monetary relief against the Sheriff and his deputies in their official capacities is deemed to be a suit against the state and is barred by the Eleventh Amendment. *Boone v. Kentucky*, 72 Fed. Appx. 306, 307 (6th Cir. 2003) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (holding that a municipal prosecutor acts as an arm of the state in prosecuting or declining to prosecute state criminal offense). Smeal has not sued the County. Accordingly, the official capacity claims against the Sheriff and his deputies are dismissed.

### C. Conspiracy

In Count 2, Smeal alleges that "Defendants" conspired to deprive Danielle of her due process and equal protection rights. However, since the Defendants all have absolute immunity for their substantive conduct, there can be no cause of action against them for conspiracy. The claim must also be dismissed as a matter of law because a governmental entity and its employees cannot conspire to violate a person's constitutional rights. *See, e.g., Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991) (applying the "intracorporate conspiracy doctrine," which posits that a corporation cannot conspire with its employees, to a claim that a school district superintendent, the district director and a school administrator conspired to violate a teacher's constitutional rights under § 1985(3)) (citing *Doherty v. Am. Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)).

### D. State Law Claims

#### 1. Official Capacity Claims

Chapter 2744 of the Ohio Revised Code was enacted to provide immunity to

-15-

political subdivisions for the acts of their employees. A suit against an employee of a political subdivision in the employee's official capacity constitutes a suit against the political subdivision. *Smitek v. Peaco*, No. 92CA005359, 1993 WL 20995, at *1 (Ohio App. 9 Dist. Jan. 27, 1993). O.R.C. § 2744.02(A)(1) sets forth a general grant of immunity for political subdivisions:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

*Id*. If none of the exceptions in § 2744.02(B) apply, the political subdivision is immune from suit. *Smitek*, 1993 WL 20995, at *1. Smeal has failed to allege an applicable exception; thus, Defendants are protected by the general grant of immunity. *Id*.

The only conceivable exception to the general grant of immunity is the exception for negligent performance of acts by the subdivision's employees with respect to proprietary (as opposed to governmental) functions of the subdivision. O.R.C. § 2744.02(B)(2). By definition, "governmental" functions include the provision of police services; judicial, quasi-judicial and prosecutorial functions; and the operation of jails. *Respectively*, O.R.C. §§ 2744.01(C)(2)(a), (f) and (h). Since the Defendants' targeted conduct falls precisely within these governmental functions, the official capacity state-law claims must be dismissed based on statutory immunity.

**2.    Individual Capacity Claims**

Under O.R.C. § 2744.03(A)(7), county prosecutors are entitled to any immunity available at common law. *Id*. It is well-settled common law in Ohio that prosecutors enjoy absolute immunity from suit for acts committed in their role as judicial officers. *See, e.g., Hawk v. Am. Elec. Power Co.*, No. 1-04-65, 2004 WL 2980656, at *2 (Ohio App. 3 Dist., Dec. 27,

2004); *Macko v. Mitrovich*, Nos. 7-082, 7-084, 1979 WL 208181, at *1 (Ohio App. 11 Dist., Oct. 1, 1979). Because the Court found that Prosecutor Sallerson's conduct in seeking Danielle's detention as a material witness fell within his role as an advocate for the State, the Court concludes as a matter of law that the tort claims against him are barred by statutory immunity.

Under O.R.C. § 2744.03(A)(6), the Sheriff and his deputies are immune from tort liability for acts occurring in the operation of their duties unless their conduct is manifestly outside the scope of their official responsibilities, undertaken with malicious purpose or bad faith, or is expressly imposed by them pursuant to another section of the Revised Code. *Id*. Each of the tort claims against these particular Defendants is premised on the alleged unconstitutional detention of Danielle. As previously discussed, however, the Sheriff and his deputies detained Danielle pursuant to a court order which is manifestly within the scope of their official duties, and Smeal has failed to allege any other basis for their liability. Accordingly, the tort claims against these Defendants in their individual capacities are barred by statutory immunity.

**IV.**

Danielle Smeal was detained as a material witness in the Summit County Jail pursuant to a facially valid court order. While an appeals court determined that Judge Murphy's order violated Danielle's constitutional rights, she cannot sue the prosecutor who sought her detention, or the sheriff and his deputies who implemented that order, for monetary damages. As a matter of law, such claims are barred by the common-law and statutory immunities discussed at length above.

Based on the foregoing, Defendants' Motion to Dismiss (**ECF No. 12**) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

<u> */s/Dan Aaron Polster    November 30, 2006*</u>
**Dan Aaron Polster**
**United States District Judge**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DANIELLE SMEAL,** | ) | **Case No. 5:06 CV 2109** |
| **by Sally Smeal, her mother and next friend,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| vs. | ) | |
| | ) | **JUDGMENT ENTRY** |
| **SHERIFF DREW ALEXANDER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

For the reasons stated in the Memorandum of Opinion and Order filed contemporaneously with this Judgment Entry, and pursuant to Federal Rule of Civil Procedure 58, it is hereby ORDERED, ADJUDGED AND DECREED that the above-captioned case is hereby terminated and dismissed as final.

　　　　　　　　　　　　　　　　　　　　*/s/Dan Aaron Polster     November 30, 2006*
　　　　　　　　　　　　　　　　　　　　**Dan Aaron Polster**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**